IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.                                          CRIMINAL ACTION NO. 2:20-cr-00063

MICHAEL NELSON

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant's motion to suppress 48 pounds of methamphetamine,[1] $41,000 in cash, and all other evidence seized during a search of his residence by the Metropolitan Drug Enforcement Network Team ("MDENT"). I find that neither the warrant application nor the warrant itself contain statements of apparent facts from which a reasonable judicial officer or a reasonable police officer could find probable cause. For the reasons discussed below, Defendant's Motion is **GRANTED.**

---

[1] The exact amount of methamphetamine involved is unclear. In Defendant's Motion to Suppress, he references 1,676.42 grams, or roughly 3.7 pounds, of methamphetamine. [ECF No. 38]. The Government's Response [ECF No. 41, at 3] and the Criminal Complaint [ECF No. 1] refer to 48 pounds of methamphetamine. While even the smaller of these two amounts is a disturbing amount of methamphetamine, the Constitution and the people's right to be free from unreasonable searches and seizures are not concerned with the amount of evidence in question.

## I.     The Warrant and the Search

On March 13, 2020, Detective Garbin of the Nitro Police Department, on assignment with MDENT, presented an application for a search warrant to a magistrate in Kanawha County, West Virginia. According to the warrant application, Detective Garbin believed that there was evidence inside the Defendant's home that he was possessing marijuana in violation of West Virginia Code § 60A-4-401(c). Detective Garbin included only three relevant statements in support of his warrant application:

(1) Two months earlier he had "received information that" Defendant was involved in the distribution of "methamphetamine and/or marijuana" at "805 North Hills Drive Charleston, West Virginia. [ECF No. 38, Ex. 1]. Detective Garbin later confirmed that Defendant actually lived at 807 North Hills Drive.

(2) Defendant had a criminal history including: (i) a 2012 conviction for delivery of marijuana, (ii) a 2015 arrest for possession of marijuana with intent to distribute, and (iii) a 2016 arrest for delivery of a controlled substance. Detective Garbin included other prior convictions and arrests in the warrant application, but they are categorically unrelated to the offense being investigated: possession of marijuana.

(3) Officers had conducted a trash pull investigation of Defendant's home and discovered "several packages of cigarillo's [sic]" which are "commonly used

2

to smoke marijuana," and "a green stem which appeared to be a marijuana stem." Officers conducted a field test of the stem, and it tested positive for marijuana.[2] Other items were listed from the trash pull, but the warrant application made no effort to explain their connection to the offense being investigated: possession of marijuana.

The magistrate then issued a sweeping warrant authorizing MDENT officers to search the entirety of Defendant's home for evidence of possession of marijuana including, but not limited to, electronic devices, books and financial records, photographs, and address books. Detective Garbin, along with other MDENT officers, conducted the search on March 18, 2020. Officers seized $41,000 in U.S. currency, 48 pounds of methamphetamine, a desktop computer, and two vehicles.[3]

A grand jury returned an Indictment against Defendant on May 12, 2020, charging him with Conspiracy to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. § 846 and Possession with Intent to Distribute 500 Grams or More of Methamphetamine in violation of 21 U.S.C. § 841(a)(1).

Defendant asserts that the fruits of the search cannot be used against him

---

[2] The field test used by officers here does not actually test for marijuana, but for the presence of THC, a chemical compound found in both hemp and marijuana. Defendant argues that the positive test result cannot be considered in evaluating the sufficiency of the warrant because hemp has been legalized in West Virginia and the officers had no way to know if the stem was a marijuana stem or a hemp stem. I am unpersuaded by this argument because the Fourth Circuit has consistently held that the sight and smell of marijuana, both identical to that of hemp, can support a finding of probable cause for search or arrest. Therefore, I will assume the stem was a marijuana stem even though no laboratory identification tests were run on it.

[3] Despite its sweeping permission to search almost all facets of Defendant's home, authorization to search or seize any vehicles is noticeably absent from the warrant.

because they were discovered and seized in violation of the Fourth Amendment.

## II.  Applicable Law

The Fourth Amendment to the United States Constitution forbids the government from violating a private citizen's security in their home without first obtaining a warrant. The oath or affirmation of the warrant application must "provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The application for a warrant must include more than "mere conclusory statements" to support a finding of probable cause. *Gates*, 462 U.S. at 239.

While "it is well settled that probable cause may be founded upon hearsay and information received from informants," *United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004), a magistrate must know something about the source of information before relying on it to find that probable cause exists. A "judicial officer's assessment of probable cause based upon the totality of the circumstances must include a review of 'the veracity and basis of knowledge of persons supplying hearsay information.'" *United States v. Perez*, 393 F.3d 457, 461–62 (4th Cir. 2004) (quoting *Gates*, 462 U.S. at 238). "Mere confirmation of innocent static details is insufficient to support an

4

anonymous tip." *United States v. Mendonsa*, 989 F.2d 366, 369 (9th Cir. 1993); *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) (finding that confirming "innocuous details" was insufficient to show reliability and veracity of tip).

Likewise, while some weight may normally be given to the fact of prior convictions of similar crimes, criminal history standing alone cannot sustain a finding of probable cause. *United States v. Melvin*, 419 F.2d 136, 141 (4th Cir. 1969). Previous arrests or convictions can support a finding of probable cause "especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover." *United States v. Perkins*, 850 F.3d 1109, 1119–20 (9th Cir. 2017). But the more time that has passed since an arrest or conviction, the less support it gives to a finding of probable cause. *United States v. Falso*, 544 F.3d 110, 123 (2d Cir. 2008) (finding that stale convictions are only marginally relevant to a probable cause determination).

Finally, evidence from a trash pull investigation can support a finding of probable cause, but the Fourth Circuit Court of Appeals has held that "because curbside trash is so readily accessible, trash pulls can be subject to abuse." *United States v. Lyles*, 910 F.3d 787, 792 (4th Cir. 2018). The "open and sundry nature of trash requires that it be viewed with at least modest circumspection." *Id.* A mere scintilla of evidence from a trash pull cannot, on its own, authorize a sweeping general search of a home. *Id.* However, evidence from trash pull investigations can support a sweeping warrant when the evidence is substantial, *United States v. Gary*, 528 F.3d

324, 326–329 (4th Cir. 2008), or when the investigating officers conduct more than one trash pull, *United States v. Wilkerson*, 808 F. App'x 171, 173 (4th Cir. 2020).

In *Lyles*, officers applying for a search warrant included evidence from a trash pull investigation in the application to support a finding of probable cause. *Lyles*, 910 F.3d at 790. There, the trash pull investigation revealed "three empty packs of rolling papers, a piece of mail addressed to the home, and three marijuana stems." *Id.* at 793. In reviewing the probable cause determination on appeal, the Fourth Circuit noted that only one trash pull was conducted, and that it was therefore unlikely to reveal evidence of recurrent or ongoing activity. The Court concluded that evidence from this single trash pull was too sparse to "provide a substantial basis for the magistrate to find probable cause to search the home for evidence of marijuana possession." *Id.* at 794.

Should I find that the magistrate who issued the warrant in this case did not have a substantial basis for concluding that probable cause existed, the fruits of the search do not necessarily need to be suppressed if the good faith exception to the exclusionary rule applies. The good faith exception provides that "evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable,'" *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). But evidence that is obtained pursuant to a search warrant

6

that is "so lacking in indicia of probable cause as to render official belief in its existent entirely unreasonable" must be excluded. *Leon*, 468 U.S. at 922.

"The key, objectively ascertainable question under *Leon* is whether a reasonably well trained officer would have known that the search was illegal in light of *all of the circumstances*." *United States v. Thomas*, 908 F.3d 68, 73 (4th Cir. 2018) (emphasis in original). "Among those circumstances are 'specific, uncontroverted facts known to the officer[]'" but not included in the warrant or warrant application. *Id.* However, where a reasonable officer would know that a probable cause determination could not be rendered without information conspicuously absent from his application for a warrant, reliance on the resulting warrant is not objectively reasonable. *United States v. Doyle*, 650 F.3d 460, 476 (4th Cir. 2011).

The reasonableness of relying on the warrant also depends, in part, on the relationship between the crime that the warrant purports to investigate, the evidence offered in support of the warrant, and the scope of the search authorized by the warrant. *See Rogers v. Stem*, 590 F. App'x 201, 208 (4th Cir. 2014) (refusing to apply the good faith exception when the evidence supported a crime other than the one listed in the warrant); *accord Messerschmidt v. Millender*, 565 U.S. 535, 550 (2012) (considering the crimes noted in the warrant when assessing its reasonableness). The good faith exception does not apply in a case with a bare bones affidavit where the magistrate acted as a "rubber stamp" in approving the search warrant. *United States v. Wilhelm*, 80 F.3d 116, 120 (4th Cir. 1996) (citing *United States v. Laury*, 985 F.2d

1293, 1311 n. 23 (5th Cir. 1993).

*Lyles* is, again, particularly informative. The good faith exception cannot apply in the case of "a flimsy trash pull that produced scant evidence of a marginal offense but that nonetheless served to justify the indiscriminate rummaging through a household." *Lyles*, 910 F.3d at 797. *Lyles*, like the case before me now, concerned a broad sweeping search warrant, authorizing the search of electronic and financial records to search for evidence of the possession of marijuana based on nothing other than the presence of a few scraps of marijuana in the trash outside the home.

## III.  Analysis

The principal question here is whether the warrant application states apparent facts sufficient to support the magistrate's conclusion that probable cause existed. *Gates*, 462 U.S. at 238–39. The warrant application presents only three facts: (1) the unsourced and undescribed information "received" by Detective Garbin; (2) Defendant's criminal history; and (3) the evidence discovered in the trash pull investigation. However, the first two of these three facts are so unsubstantiated or remote that I am left with only one fact to support a sweeping search of an entire home.

First, Detective Garbin states that he "received information" that the Defendant, living at 805 North Hills Drive, was distributing "marijuana and/or methamphetamine." But Detective Garbin did not include a single detail about the source of this information. Was the information from another police officer? An

anonymous tip? Was the information overheard in an elevator? No one reviewing the warrant would have any way of knowing where this information came from. This is unacceptable. When applying for a search warrant based on hearsay, the applicant must include facts in support of the source's reliability and accuracy.

Detective Garbin did no such thing here. Rather, he supported this "information" with mere details of his investigation following up on the tip. This falls short. Detective Garbin confirmed that Defendant actually lived at 807 North Hills Drive, not 805, by checking law enforcement databases. He further confirmed that two of the vehicles often seen in front of the home were registered to Defendant. The confirmation of these innocuous static details does not provide any information about the reliability or accuracy of the "received information" or its source. These details were available to any person with an internet connection. Because no details were provided about the information's source, it could not support a finding of probable cause that evidence of marijuana possession would be found in Defendant's home.

Detective Garbin also included Defendant's criminal history in the warrant application, detailing six different arrests and convictions. But only three of these arrests and convictions are relevant to the crime being investigated: possession of marijuana. Defendant was convicted of delivery of marijuana in 2012; arrested for but not convicted of possession with intent to distribute marijuana in 2015; and arrested for but not convicted of delivery of a controlled substance in 2016. These events are far too temporally remote from the search in question to support a finding

9

of probable cause that evidence of marijuana possession would be found in Defendant's home.

Having determined that the "received information" and Defendant's criminal history offer no practical support to a finding of probable cause, I am left with the meager evidence from the trash pull investigation. Therefore, it is clear that *Lyles* controls and the fruits of this search must be suppressed.

From two trash bags taken from the front of Defendant's home, officers discovered several packages of cigarillos, "commonly use[d] to smoke marijuana," and "a green stem which appeared to be a marijuana stem." Detective Garbin did list other items discovered in the trash pull investigation, but he made no effort to explain how those items were connected to the crime being investigated, possession of marijuana, or how they supported a finding of probable cause. Therefore, I am, just as the magistrate judge should have been, left with the cigarillos and the single marijuana stem.

The evidence here is even more sparse than it was in *Lyles*. From the trash pull in *Lyles*, investigators recovered three empty packages of rolling papers and three marijuana stems. 910 F.3d at 793. Here officers discovered only a single marijuana stem. And like in *Lyles*, officers here conducted only a single trash pull investigation which is unlikely to reveal evidence of recurrent or ongoing activity. None of the additional facts or repeated trash pulls that are found in cases where the Fourth Circuit has upheld search warrants based on trash pull investigations are

present in this case. A miniscule scrap of marijuana and empty packages of a legal tobacco product are clearly insufficient to provide a substantial basis for the magistrate to find probable cause to search Defendant's entire home for evidence of marijuana possession.

Even when considered in the aggregate, the evidence presented to the magistrate in the warrant application is no greater than the sum of its parts. In the same way that even a small child could not sit on a stool with three rotten legs, the magistrate's finding of probable cause cannot be supported by the three dubious justifications provided by the Government. I find that there was no substantial basis for the magistrate's conclusion that probable cause existed.

Having found that there was no substantial basis for the magistrate's finding of probable cause, I now turn to whether the good faith exception applies in this case. At this point the Government asks me to consider, as I am required to, facts known to Detective Garbin that were not included in the warrant application. The Government asserts those additional facts would make Detective Garbin's reliance on the warrant reasonable.

First, though Detective Garbin was aware of the actual source of his information, he was also aware that the confidential source had provided the tip two months prior to the warrant application, that this source had never provided reliable information before, and that the source had skipped town the month before. Next, Detective Garbin was aware that he had set up a pole camera in front of Defendant's

home, surveilled Defendant's home for an entire month, and observed no suspicious activity. None of these additional facts known to Detective Garbin are sufficient to make his reliance on the warrant reasonable.

Also, like in *Lyles*, this warrant was unreasonably broad—bordering on a general warrant—to investigate possession of marijuana. It authorized the search of electronic devices and financial records that have no connection to the offense of marijuana possession.

The Fourth Circuit's conclusion in *Lyles* applies as well here as it did there.

> *Leon*'s standard is ultimately an "objective" one. And objectively speaking, what transpired here is not acceptable. What we have before us is a flimsy trash pull that produced scant evidence of a marginal offense but that nonetheless served to justify the indiscriminate rummaging through a household. Law enforcement can do better.

*Lyles*, 910 F.3d at 797 (internal citation omitted). Defendant's Motion to Suppress is **GRANTED.** The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:      April 22, 2021

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

12